IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Anita Russell,                          :

       Plaintiff,                 :

   v.                                  :      Case No. 2:08-cv-0296

                          :      JUDGE HOLSCHUH
Commissioner of Social
Security,
                          :

       Defendant.

REPORT AND RECOMMENDATION

## I.  Introduction

Plaintiff, Anita Russell, filed this action seeking review
of a final decision of the Commissioner of Social Security
("Commissioner") denying her application for supplemental
security income.  That application, filed on July 19, 2002,
alleged that plaintiff became disabled on April 10, 1996, due to
a vertebrogenic disorder, depression and complaints of diffuse
body pain.

After initial administrative denials of her claim, plaintiff
was afforded a hearing before an Administrative Law Judge on
March 7, 2005. In a decision dated September 14, 2005, the
Administrative Law Judge denied benefits.  That decision became
the final decision of the Commissioner when the Appeals Council
denied review on January 31, 2008.

Plaintiff thereafter timely commenced this civil action.
The record of administrative proceedings was filed in this Court
on June 2, 2008.  Plaintiff filed her statement of errors on
August 1, 2008.  The Commissioner filed a response on September
8, 2008, and plaintiff filed a reply brief on October 7, 2008.
The matter is now ripe for decision.

## II. The Lay Testimony

Plaintiff's testimony at the administrative hearing revealed the following.  Plaintiff, who was 47 years old at the time of the administrative hearing, had not worked since she was a teenager.  (Tr. 951).  She testified that on May 24, 1998, three-fourths of her body went numb and she had been having disc problem since that date.  In particular, she had lower back pain radiating to her left leg.  (Tr. 952).  She had spinal surgery the previous year and also had physical therapy after surgery which caused problems with her right shoulder.  (Tr. 953).  She also has problems with her right arm, right shoulder, the right side of her face and her neck.  (Tr. 955).  She was seeing her doctor the day after the hearing and expected him to recommend surgery on her shoulder.  (Tr.  956).

Plaintiff testified that she has emotional issues but they arise out of her physical symptoms.  She gets aggravated because she is unable to do housework, sewing, or reading.  (Tr. 957).  She had been gaining weight recently and also had crying spells several times a week.  She was taking medication for depression and to help her sleep.  (Tr. 958-59).

Plaintiff testified that she is most comfortable lying in bed with something supporting her arm and her legs.  She can sit for half an hour to 45 minutes at a time before having either to lie down or to stand and stretch.  She can walk for 20 minutes and stand in place for the same amount of time.  She is able to dress herself and can lift a gallon of milk with her left hand. (Tr. 959-60).  She has difficulty climbing stairs, can do light cooking, and can wash dishes.  (Tr. 960).  She cannot sweep, mop, vacuum, do laundry, or go grocery shopping.  (Tr. 961).  She does back exercises every other day but does not visit neighbors, pursue hobbies, or do any yard work or gardening.  (Tr. 961-62). She has used marijuana to relieve her pain.  (Tr. 962-63).

In response to questioning from her attorney, plaintiff discussed the treatment she receives for her pain, including a muscle rub, ice packs, a TENS unit (which she was wearing at the administrative hearing) and massage therapy. (Tr. 966-67). She also testified that she uses assistive devices to get dressed and that it is very difficult for her to shower and wash her hair. (Tr. 969).

Plaintiff's sister, Judith Pennington, also testified at the administrative hearing. She stated that plaintiff cried from pain while riding in the car to attend the hearing. (Tr. 971). She further testified that if plaintiff attempts any small task, she hurts for several days thereafter. (Tr. 972). She did not believe the plaintiff would be able to work because she cannot even hold a telephone for several minutes. (Tr. 973).

### III.  Summary of the Records

Because plaintiff's claims of error in the Commissioner's decision relate primarily to her physical condition, the Court will summarize the medical records concerning that condition in some detail. The records concerning her psychological impairments will not be summarized here.

Plaintiff was seen at the Ohio State University Center for Pain Control for an initial evaluation on October 23, 2000. She reported at that time that she drank infrequently and did not use recreational drugs. She stated her pain was confined to the right side of her body including her face, shoulder, hand, lower back, right leg, and foot. Any physical activity increased her pain and she was taking a number of medications for pain and other conditions. An examination which occurred on October 23, 2000 showed some tenderness and limitation of motion in her back. The doctors who examined her thought she probably had radiculitis in the cervical and lumbar regions. She underwent a series of epidural injections in 2001 and she showed some improvement. By

June of 2001, she had been prescribed Vicodin for pain and by September she had made moderate progress toward her treatment objectives. A treatment note from December, 2001 indicated significant improvement in her lumbar pain with physical therapy. (Tr. 134-84).

Plaintiff was seen by Dr. Penix on March 13, 2002 complaining of low back pain. Her examination was essentially normal. Radiological studies showed a grade I spondylolisthesis at L5-S1. Although Dr. Penix thought she might be a surgical candidate, she stated that her back pain was not really bad enough to warrant surgery. (Tr. 207-08).

Plaintiff's chiropractor filled out a pain questionnaire on September 3, 2002. He felt that plaintiff could lift up to 10 pounds occasionally, could stand or walk for less than an hour, and could also sit for less than an hour. She could occasionally balance and to perform other postural activities, and she was limited in her ability to push and pull. (Tr. 220-22).

Plaintiff saw Dr. Khosrovi for evaluation of her back and leg pain. On November 1, 2002, he reported that she was complaining of low back pain with radiation into the left leg as well as numbness in the right leg going down to the toes. She also complained of numbness and pain in the right side of her face, in her neck, and in her right shoulder and arm. She stated that prolonged sitting, standing, walking and bending aggravated her symptoms. Injections, physical therapy, and chiropractic treatment had not significantly benefitted her. She showed a decreased range of motion of the cervical and lumbar spines but they were not tender on examination. Her strength was intact and symmetrical and the only decrease in sensation was on the right side of her face. Dr. Khosrovi thought she might benefit from surgery and discussed that option with her. (Tr. 270-72).

Dr. Holley submitted various notes indicating that he had

been treating plaintiff for hyperlipidemia, general anxiety
disorder, chronic obstructive pulmonary disorder, and low back
symptoms.  Included in his notes is an unsigned assessment of her
ability to do physical activities indicating that she could lift
up to 10 pounds occasionally, could stand or walk for less than
an hour, and could sit only three or four hours.  He thought she
could frequently balance and occasionally perform other postural
activities and that she should not work around heights or moving
machinery.  He also thought she needed to rest for 10 minutes out
of every 30 minutes.  (Tr. 293-94).  He also noted, on August 8,
2002, that she did obtain some relief from pain through
medication and that her pain had decreased in the last 12 months.
He identified psychological and economic factors as contributing
to her pain.  (Tr. 298).

Plaintiff also saw Dr. McCleary in 2002.  He stated in a
report dated August 27, 2002 that he anticipated her pain to
improve over the next 12 months that he had not been following
her for very long.  She could lift less than 5 pounds based upon
the fact that she had painful feet and that pain was aggravated
by standing and ambulation.  She could stand or walk for one to
two hours secondary to plantar fasciitis pain and she had no
problems sitting.  He interpreted an MRI which showed chronic
disc space narrowing at L5-S1 and noted that she complained of
right shoulder pain although her muscle strength was normal.  She
did have a full range of motion in her shoulder as well, and an
MRI of the shoulder did not show a rotator cuff tear. (322-32).

Dr. Mehta saw plaintiff on March 5, 2003.  Plaintiff's chief
complaint was right neck and shoulder pain although she did
describe symptoms throughout the body.  Dr. Mehta noted that
plaintiff had seen many specialists who could find no real
etiology for her symptoms, and also noted that a functional
capacity assessment had been done several years earlier showing

that she could do light physical work.  Physical examination
revealed wheezing in the lungs and pain along the cervical spine.
There was "a lot of evidence for nonorganic symptoms."  Dr.
Mehta's impressions included chronic pain behavior without a
clear etiology, and there was a strong recommendation that
plaintiff quit smoking.  (Tr. 361-63).

Plaintiff was seen by Dr. Chila in April, 2003 for an
evaluation of her right arm and back numbness.  His assessments
included costovertebral joint pain, a herniated disk at C6-7, and
somatic dysfunction of multiple areas of her body.  He provided
osteopathic manipulative treatment which produced some
improvement in mobility.  He thought she might be a candidate for
a neurosurgical consultation.  (Tr. 416-18).

Dr. McCleary completed another assessment of plaintiff's
physical capabilities in December of 2003.  At that time, she
could lift less than 5 pounds frequently, could stand or walk for
one to two hours, and could also sit for one to two hours.  She
had a number of other limitations and she did require rest
periods during the day.  However, he did not specify either the
medical findings supporting his assessment or quantify the number
of rest periods which she needed.  (Tr. 442-43).

Plaintiff was also seen by Dr. Ellison on referral from the
massage therapist at the Holzer Medical Center.  Dr. Ellison
reported on January 22, 2004 that plaintiff had marked and
diffuse myofascial tenderness across the upper thoracic,
cervical, and lower lumbar spines.  There was no muscle atrophy,
wasting or weakness and her reflexes were symmetrical.  Straight
leg raising was negative.  She showed marked pain behavior but
could walk without difficulty.  His assessment was chronic neck
and back pain and fibromyalgia and he indicated he had no
treatment plan for her.  (Tr. 469-70).

Dr. Todd saw plaintiff by way of referral from Dr. McCleary.

In a report dated November 23, 2003, he stated that, according to plaintiff, the pain in her low back and had gotten worse in the last six months.  At that point, she was able to walk less than half a block and reported that walking, climbing steps, bending or twisting exacerbated her pain.  She also reported severe neck pain.  The range of motion in her spine was limited and she showed some diminished sensation on the right side.  Although an MRI showed disc herniation of the cervical spine, there was no evidence of cord or nerve root involvement.  After obtaining a new MRI, Dr. Todd reported on December 15, 2003 that plaintiff was given five options, including surgery.  Plaintiff saw Dr. Todd again on February 25, 2004, at which time plaintiff requested to proceed with surgery.  (Tr. 523-30).

Plaintiff underwent spinal fusion surgery on May 20, 2004. Severe stenosis was observed during the surgery.  She also had excessive osteoporosis.  (Tr. 543-45).  She underwent a course of rehabilitation and was discharged to her residence on July 9, 2004.  Dr. Ellison evaluated her capabilities after the surgery and stated that she could occasionally lift up to 20 pounds, could walk for up to two hours, and could sit for up to two hours.  She could not push and pull or work around heights or moving machinery.  At that time, she required rest periods during the day, but only every one to two hours.  (Tr. 710-12).

Dr. Apgar performed a disability evaluation on November 19, 2004.  At that time, plaintiff's chief complaint was chronic pain in the neck and upper back.  She did not report any generalized fatigue or weakness but she did describe joint pain, neck pain, back pain, and muscle weakness.  Her gait was described as steady but deliberate.  She did not demonstrate any muscle spasm. Straight leg raising was negative bilaterally.  Dr. Apgar's impression was chronic pain syndrome in both the cervical and lumbar spines as well as early COPD.  He did not think she would

have any difficulty handling objects with her dominant hand but
she would have some difficulty with standing, walking, sitting,
lifting, carrying, pushing, and pulling.  Nevertheless, she
showed good muscle strength in the upper and lower extremities.
He quantified his findings by indicating that plaintiff could
stand at least two hours in a workday and could sit for less than
six hours.  Posturally, she could never climb, could occasionally
do other activities, and was limited from reaching overhead.  She
also had some environmental restrictions.  (Tr. 722-44).

There are a number of reports detailing plaintiff's progress
after surgery.  On October 18, 2004, five months after the
surgery, she was reporting no pain in her right leg and only some
mild back pain. She did have pain in her neck and upper back
which had been getting worse for the past month.  On December 6,
2004 she stated that therapy had helped tremendously in the past
with respect to her neck and back pain and stated she was still
doing well with her lower back.  (Tr. 745-49).  On January 31,
2005, she was still complaining of pain in her right shoulder,
and an MRI for that condition was prescribed.  (Tr. 750-51).
That MRI showed probable partial to complete tear of the
distal/supraspinatus with superimposed tendinopathy.  She was
then scheduled for surgery.  Within six weeks after the surgery,
her shoulder was not bothering her but she was having muscle
spasms in the area.  (Tr. 762).

### IV. The Vocational Testimony

A vocational expert, Mr. Braunig, also testified at the
administrative hearing.  He was asked to assume that plaintiff
could work at the medium exertional level with certain physical
and psychological restrictions, which will be more fully
described below.  With those restrictions, she could perform
approximately 6,600 jobs at the medium level, approximately
17,000 jobs at the light level, and about 3,500 sedentary jobs,
all in a regional economy.  (Tr. 975-76).  She could also work if

she needed a break every two hours, but not if the break were for more than fifteen minutes.  (Tr. 979-80).

### V.  The Commissioner's Decision

Based upon the above evidence, the Commissioner concluded that plaintiff suffered from severe impairments including a history of lumbar and cervical degenerative disc disease with associated residuals of a prior lumbar surgery, an ongoing history of polysubstance abuse, including alcohol, marijuana, and narcotic pain medications, right should tendonitis, and borderline chronic obstructive pulmonary disease.  The Commissioner further found that plaintiff could perform work at the light exertional level, but was limited to working in clean-air, temperature controlled environments and could not use her right arm for pushing or pulling.  Further, she could not climb ladders, work at unprotected heights, use vibrating tools or equipment, and could only occasionally balance, kneel, crouch, crawl or stoop.  She also could not do fast-paced work involving production quotas or frequent contact with the public.  With these restrictions, however, and based on the testimony of the vocational expert, the Commissioner found that plaintiff could still perform a number of unskilled jobs at the light and sedentary levels.  As a result, she was not entitled to benefits.

### VI. Analysis

In her statement of errors, plaintiff raises the following issues.  First, she contends that the Commissioner did not properly evaluate her complaints of pain.  Second, she asserts that her daily activity level is supportive of her claim of disability.  Third, she contends that the Commissioner mischaracterized the evidence concerning both her testimony and that of her corroborating witness.  Fourth, she asserts that the Commissioner did not accurately assess her residual functional capacity.  Fifth, she claims that the ALJ demonstrated bias against her and her witness.  Finally, she requests a remand to consider evidence that was submitted to the Appeals Council.  The

underlying question is, for the most part, whether the
Commissioner's decision is supported by substantial evidence.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence.  Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

The plaintiff's first argument is that her subjective
complaints of pain were not properly evaluated.  Evaluation of a
claimant's subjective reports of disabling pain is subject to a
two-part analysis.  First, the Commissioner should determine if
there is objective medical evidence which confirms the presence
of disabling pain.  If not (and there frequently is not, given

-10-

that pain is difficult to measure or quantify, and is experienced differently even by persons with the same underlying condition), the Commissioner should determine if the claimant suffers from an objectively-established medical condition of sufficient severity to permit a reasonable inference to be drawn that the disabling pain actually exists.  See Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986).  This procedure is reflected in 20 C.F.R. §404.1529(a).

It is important to note that these inquiries are to be made separately, and that if there is objective evidence of a sufficiently severe underlying condition, a claimant can prove the existence of disabling pain due to that condition through other evidence even if the medical evidence is not helpful in establishing the extent of the claimant's pain.  Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).  Thus, the Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  The Commissioner should also give appropriate weight to the opinion of a long-term treating physician as to whether the claimant is accurately reporting or exaggerating the extent to which disabling symptoms exist.   Felisky, 35 F.3d at 1040.  If the Commissioner summarily rejects the claimant's testimony concerning pain without considering these matters, reversal or remand may be warranted.

Here, the Commissioner found that plaintiff's description of her symptoms was not entirely credible.  That was based on her ability to do some daily tasks, the fact that her conditions had,

for the most part, been treated conservatively, and the fact that
her description of her abilities differed from that given by some
of the treating or examining physicians.  Those are all
acceptable reasons for discounting a claimant's credibility.
Although there is contrary evidence in the record, the
Commissioner was not bound to accept it.  The Court finds no
error in the Commissioner's determination that plaintiff's pain
was not, of itself, a disabling condition.

        The latter part of plaintiff's argument on this issue, as
well as her argument in the reply brief, focuses more on the
question of whether the Commissioner gave appropriate weight to
the opinions of her treating physicians or accurately interpreted
the medical records.  The above review of those records indicates
a wide variance in the physicians' assessments of plaintiff's
physical capabilities.  It also indicates that she was treated by
a large number of physicians, most of whom saw her for only a
year or two, and many of whom focused on only one of her
conditions, such as her lower back impairment, her shoulder
problem, or her obstructive pulmonary disease.  The Commissioner
chose to give the most weight to the evaluation done by Dr.
Apgar.  Although he was not a treating source, he did a thorough
examination and was able to assess her multiple medical issues.
The Commissioner pointed out that many of the more pessimistic
assessments of plaintiff's condition came prior to her back
surgery, and that the post-operative reports did show improvement
in those symptoms.  Dr. Ellison's report of September 14, 2004,
which was only four months post-surgery, is also consistent with
Dr. Apgar's assessment except for the amount of sitting that
plaintiff was capable of.  Again, given these conflicts in the
evidence, and the fact that most of the physicians' assessments
depended in large part on plaintiff's own self-report of symptoms
(indeed, there were multiple reports stating that etiology of her

complaints were unknown or that her symptoms were influenced by non-physical factors), the Commissioner did not err in finding Dr. Apgar's report to be the most reliable.

Plaintiff also claims that the ALJ both mischaracterized the evidence and showed bias against her and her witness.  To the extent that this claim is directed at the ALJ's discussion of the medical evidence, that claim is more fully addressed above.  The Court does note an inconsistency between Dr. Apgar's findings and the Commissioner's conclusion that plaintiff can do light work, but even if she were limited to sedentary work, there was testimony that significant numbers of jobs exist for someone with her functional capacity.  Further, any discrepancies between her and her sister's testimony and the ALJ's recitation of that testimony are minor.  Finally, although the ALJ did make some observations about plaintiff's use of narcotics and her apparent drug-seeking behavior, and asked questions going to those issues, that area of inquiry is supported by the record.  Several physicians questioned both plaintiff's pursuit of narcotic medications and her admitted use of marijuana.  There is also evidence in the record that plaintiff's sister may have had problems with alcohol.  Consequently, the Commissioner's inquiry into those areas (including his question to plaintiff's sister about a "smell of alcohol") is not evidence of bias, but of an effort to explore matters of legitimate concern to the decision-maker.

Lastly, plaintiff asserts that the records she submitted to the Appeals Council are both new and material, and provide a basis for a sentence six remand.  The remand provision of 42 U.S.C. §405(g) was amended in 1980 in an effort to limit remands for consideration of additional evidence in social security cases.  Willis v.Secretary of H.H.S., 727 F.2d 551 (6th Cir. 1984) (citing Dorsey v. Heckler, 702 F.2d 597 (5th Cir. 1983)).

The statute provides that the Court may order a case remanded for further consideration of additional evidence "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). The plaintiff has the burden of proof on the issue of whether a remand is appropriate.

To show good cause, Plaintiff must present some justification for the failure to have acquired and presented such evidence for inclusion in the record during the hearing before the Administrative Law Judge. Willis v. Secretary of H.H.S., 727 F.2d 551; Birchfield v. Harris, 506 F.Supp. 251, 252-53 (E.D. Tenn. 1980). Evidence submitted after the ALJ's decision and which is not reviewed by the Appeals Council cannot be considered by the district court unless good cause is shown for the failure to have presented the evidence to the ALJ. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

To be "material" within the meaning of 42 U.S.C. §405(g), the new evidence must be relevant and probative and must establish a reasonable chance that the Commissioner would reach a different conclusion. Chancey v. Schweiker, 659 F.2d 676 (5th Cir. 1981); Thomas v. Schweiker, 557 F.Supp. 580 (S.D. Ohio 1983). New evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter. Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980). Additionally, the new evidence must relate to a condition which affected the plaintiff's ability to work at the time the administrative decision was made. Evidence concerning a newly-developed medical condition is not ordinarily relevant to the question of whether the plaintiff was disabled at the time the Secretary's decision was entered. Oliver v. Secretary of H.H.S., 804 F.2d 964 (6th Cir. 1986).

Here, the Court agrees with the Commissioner that the

evidence is not "material."  For the most part, it mirrors
evidence already of record.  Although plaintiff asserts that it
meets the materiality standard, she does not identify any
specific records that would likely have changed the
Commissioner's decision.  The fact that she has continued to seek
treatment for the same conditions which were considered by the
Commissioner does not, by itself, indicate that the Commissioner
would have been persuaded that the conditions and their resultant
impact on plaintiff's residual functional capacity were severe
enough to warrant an award of benefits.

## VII.  <u>Conclusion</u>

For the foregoing reasons, it is recommended that the
plaintiff's statement of errors be overruled and that judgment be
entered in favor of the defendant Commissioner.

## VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation,
that party may, within ten (10) days of the date of this
Report, file and serve on all parties written objections to
those specific proposed findings or recommendations to which
objection is made, together with supporting authority for the
objection(s).  A judge of this Court shall make a <u>de novo</u>
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made.  Upon proper objections, a judge of this Court may
accept, reject, or modify, in whole or in part, the findings
or recommendations made herein, may receive further evidence
or may recommit this matter to the magistrate judge with
instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to
object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation <u>de novo</u>, and also operates as a
waiver of the right to appeal the decision of the District

Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u><br>
United States Magistrate Judge